# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| CLIVE C. PETTIS, SR.,<br>    Plaintiff,<br><br>v.<br><br>NOTTOWAY COUNTY SCHOOL BOARD,<br>*et al.*,<br>    Defendants. | CIVIL NO. 3:12cv864 (HEH) |

## REPORT AND RECOMMENDATION

Plaintiff Clive C. Pettis, Sr., ("Plaintiff") brings this suit against Defendants Nottoway County School Board ("the Board"), Helen Simmons, Wallace Hurt, Robert Horn, Jacqueline Hawkes, Shelli Hinton, individually and in their official capacities as duly elected Members of the Nottoway School Board; and Daniel J. Grounard, individually and in his official capacity as Superintendent of Nottoway County Schools, alleging retaliatory discharge, racial discrimination in violation of Title VII of the Civil Rights Acts of 1964 and 1991 and 42 U.S.C. §§ 1981 and 1983, and the denial of due process of law as a result of the Board's failure to renew Plaintiff's contract as a computer technician and coach for the 2011-12 school year and for refusing Plaintiff an opportunity to appeal the Board's decision.

This matter is now before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the Defendants' Partial Motion to Dismiss (ECF No. 11) in which Defendants seek to dismiss the retaliatory discharge and racial discrimination claims against the individual Board members as to both their individual and official capacities on the grounds that no individual liability exists under Title VII and §§ 1981 and 1983. Additionally, Defendants

challenge Plaintiff's due process claim on the grounds that Plaintiff maintains no property interest or constitutional right in continued employment. For the reasons set forth herein, the Court recommends that Defendants' Motion be GRANTED in part and DENIED in part.

## I. BACKGROUND

When addressing a motion to dismiss for failure to state a claim, the Court must assume that all well-pleaded allegations in the Complaint are true and must also view the facts in the light most favorable to Plaintiff as the non-moving party. *T.G. Slater & Son, Inc. v. The Donald P. and Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Viewing the facts through these respective lenses, the Court considers the facts as follows.

On October 1, 1993, the Board hired Plaintiff, an African-American male, as a high school basketball coach and network administrator for which he continued to be employed until 2011. (Am. Compl. ¶¶ 8, 11-12.) On or about October 24, 2006, then Division Superintendent Gwen E. Edwards ("Edwards") told Plaintiff that she intended to dismiss him as head basketball coach for alleged violations of Virginia High School League regulations stemming from an off-season open gym program that Plaintiff ran. (Am. Compl. ¶ 13.) After an investigation, the VHSL found no violation. (Am. Compl. at ¶ 19.)

On October 27, 2006, Edwards relayed concerns about technology problems within the School District and attributed them to Plaintiff; however, Plaintiff alleges that the problems stemmed from the actions of David Johnson, a white network administrator. (Compl. at ¶¶ 19-21.) A few days later, Edwards sent Plaintiff a letter recommending that Plaintiff be terminated from his position as the varsity basketball coach due to "(1) alleged unprofessional conduct related to athletic responsibilities in 2005 through 2007; (2) alleged failure to follow the school's

administrative guidelines related to open gyms and out-of-season programs; and (3) alleged insubordination and failure to follow the principal's and superintendent's directives regarding open gym and out-of-season programs." (Am. Compl. at ¶ 22.) Plaintiff was suspended without pay from his position from November 1 until November 3, 2011. (Am. Compl. at ¶ 28.) After requesting a hearing and negotiating with the Board, Plaintiff remained in his position on probationary terms. (Am. Compl. at ¶¶ 24, 26-27.) Plaintiff filed a claim with the EEOC on February 21, 2007, alleging that he was a victim of retaliation following his complaints of discrimination arising from his suspension from work, but the EEOC dismissed the claim. (Am. Compl. at ¶¶ 28-29.)

Plaintiff alleges that Edwards forced him to obtain a teaching certificate endorsement for computer technology, threatening to recommend Plaintiff's termination to the Board if Plaintiff failed to obtain the certificate. (Am. Compl. at ¶ 31.) As a result, Plaintiff obtained a teaching license and a Master's Degree in Education Administration. (Am. Compl. at ¶ 32.) Edwards imposed the same requirement on Johnson; however, he only acquired a provisional teaching license and failed to seek a teaching certificate, but no adverse employment consequences followed. (Am. Compl. ¶¶ at 34-36.)

Thereafter, Plaintiff attended several meetings with Daniel Grounard, the new Superintendent. Plaintiff tape recorded one of the meetings. (Am. Compl. at ¶ 69.) Defendant Grounard sent Plaintiff a letter indicating that Plaintiff had acted unprofessionally by tape recording the meeting. (Am. Compl. at ¶ 71). On April 18, 2011, Grounard wrote another letter to Plaintiff, indicating that Plaintiff's contract as a network administrator would not be renewed for the 2011-12 school year. (Am. Compl. at ¶ 72.) Plaintiff was placed on administrative leave with pay for the remainder of his contract, which expired on June 30, 2011. (Am. Compl. at

¶ 72.) In forms submitted to the Virginia Employment Commission, the Board cited Plaintiff's failure to disclose the use of a tape recorder at a meeting with the Superintendent as the reason for Plaintiff's contract nonrenewal. (Am. Compl. at ¶ 79.) Plaintiff sought to appeal the decision, but on May 16, 2011, the Board's clerk advised Plaintiff that the Board approved the nonrenewal of his contract. (Am. Compl. at ¶ 76-78.) Before initiating this suit, Plaintiff filed another claim with the EEOC in January 2012 alleging discrimination and retaliation that created a hostile work environment. (Am. Compl. at ¶ 73.)

Plaintiff then filed suit in this Court, alleging claims against the Board, its members and the superintendent — all in their individual and official capacities — for retaliatory discharge and racial discrimination in violation of Title VII, §§ 1981 and § 1983, and the denial of due process of law. (Am. Compl. at ¶¶ 89-98.) Defendants Hurt, Horn, Hawkes, Hinton and Grounard move to dismiss the retaliation and discrimination claims on the basis that no individual liability exists for violations of Title VII and §§ 1981 and 1983. The Board, Simmons, Hurt, Horn, Hawkes, Hinton and Grounard also challenge Plaintiff's due process claim, arguing that Plaintiff lacks a property interest or constitutional right in continued or renewed employment.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the Complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. ANALYSIS

Defendants move to dismiss Plaintiff's retaliatory discharge and racial discrimination claims against the individuals on the grounds that no individual liability exists under Title VII and §§ 1981 and 1983. Plaintiff provides no argument in support of his position that the individuals can be held personally liable for Title VII and §§ 1981 and 1983 violations, but argues that *Ex parte Young*, 209 U.S. 123 (1908), allows actions against individual government officials in their official capacities. (Pl.'s Mem. in Opp. to Mot. to Dismiss ("Pl.'s Opp.") (ECF No. 15) at 2.) Additionally, Defendants challenge Plaintiff's due process claim on the basis that Plaintiff maintains no property interest or constitutional right in continued employment. Plaintiff responds that he should be treated as a teacher — thereby holding a cognizable property interest — because he obtained a teacher's certificate.

A. Retaliatory Discharge and Racial Discrimination

    1. Title VII Claims against the Individual Defendants

        a. Individual liability under Title VII

Defendants Simmons, Hurt, Horn, Hawkes, Hinton and Grounard move to dismiss Plaintiff's Title VII retaliatory discharge and racial discrimination claims on the basis that individual liability under Title VII claims does not exist. (Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") (ECF No. 12) at 4.) Plaintiff provides no response in defense of his claim.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a). "Only persons who qualify as employers within the meaning of 42 U.S.C. § 2000e(b) are liable under Title VII." *Lissau v. Southern Food Services, Inc.*, 159 F.3d 177, 178, 181 (4th Cir. 1998). Title VII defines employer "as a person engaged in an industry affecting commerce who has fifteen or more employees" and "any agent of such a person." 42 U.S.C. § 2000e(b). Therefore, employees and supervisors are not liable in their individual capacities for Title VII violations. *Lissau*, 159 F.3d at 178, 181.

The Fourth Circuit has held that Congress did not intend to impose liability on individuals and supervisors for Title VII violations. In *Lissau*, the Court found that, because Title VII defined employer as a person who employs fifteen or more workers, Congress sought to protect small employers; therefore, it was unlikely that Congress intended to hold individuals liable. 159 F.3d at 180. Moreover, the Court reasoned that damages under Title VII include back pay and equitable relief, but back pay and equitable relief are typically not obtainable from

6

an individual. *Id.* at 180-81. Further, Title VII provides for compensatory and punitive damages specifically from companies, but the statute does not provide a method for obtaining such damages from individuals. *Id.* at 181. Consequently, the Court concluded that individuals cannot be liable under Title VII.

This principle applies for Title VII claims against individual school board members. In *Walton v. Sch. Bd. of Gloucester Cnty.*, 2006 WL 3838235, at *2-4 (E.D. Va. 2006), Plaintiff alleged that her applications for teaching positions were repeatedly denied by the school board on the basis of her age and race; therefore, she sued the school board, the individual members of the school board and the superintendent of the school district under Title VII. This Court found that, in light of *Lissau*, Plaintiff's Title VII claims against the individual board members and the superintendent in their personal capacities could not stand, because they were not Plaintiff's employer. *Id.*

Here, the Board hired Plaintiff on October 1, 1993. (Am. Compl. at ¶ 11). Simmons, Hurt, Horn, Hawkes and Hinton were duly elected members of the Board and Grounard served as Division Superintendent of Nottoway County Schools. (Am. Compl. at ¶ 9-10, 37). The Board employs more than 50 employees and is therefore subject to the requirements of Title VII. (Am. Compl. at ¶ 2). However, none of the individual defendants served as Plaintiff's employer. *Walton*, 2006 WL 3838235, at *2-4. Therefore, the Court recommends that the Title VII claims for retaliatory discharge and discrimination against Defendants Simmons, Hurt, Horn, Hawkes, Hinton and Grounard in their individual capacities be DISMISSED.

b. Official Capacity Claims under Title VII

Defendants Simmons, Hurt, Horn, Hawkes, Hinton and Grounard move to dismiss Plaintiff's retaliatory discharge and racial discrimination claims under Title VII, arguing that

individual defendants cannot be held liable in their official capacities. (Defs.' Mem. at 4.) Again, Plaintiff offers no support for his claims against the individual defendants in their official capacities. Because the Court finds that the claims against the individuals in their official capacities are duplicative of the claim against the Board for Title VII violations, the Court finds that dismissal would be appropriate.

"Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (internal quotations omitted). A suit against an individual in his official capacity "is not a suit against the official personally, for the real party in interest is the entity." *Id.* at 166. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" and should be dismissed on the basis that it is duplicative. *Id.* (citing *Brandon v. Holt*, 496 U.S. 464, 471-72 (1985)).

In Virginia, the supervision of each school division is entrusted to a school board, which consists of appointed or elected school board members. Code of Virginia §§ 22.1-28, 71. School board members' duties are assigned to them by the school board as a whole. Code of Virginia § 22.1-71. Further, the school board appoints a superintendent to oversee the school division. Code of Virginia § 22.1-60(A). When a superintendent and school board members are sued in their official capacity, it "is essentially a claim against the [school board]." *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004); *see also Walton*, 2006 WL 3838235, at *4 (dismissing discrimination claims under Title VII against individual school board members and the superintendent as duplicative when the school board was named as a party).

Here, Plaintiff brought his claims under Title VII against Defendants Simmons, Hurt,

Horn, Hawkes, Hinton and Grounard in their official capacities as duly elected members of the Board and the superintendent, as well as against the Board. (Am. Compl. at ¶¶ 8-10, 89-96). These claims against the individual defendants in their official capacities are essentially claims against the Board, which is the real party in interest. *Graham*, 473 U.S. at 165-66. Therefore, the Court recommends that Plaintiff's Title VII claims for retaliatory discharge and racial discrimination against Defendants Simmons, Hurt, Horn, Hawkes, Hinton and Grounard in their official capacities be DISMISSED.

2. Sections 1981 and 1983 Claims against the Individual Defendants

Defendants Simmons, Hurt, Horn, Hawkes, Hinton and Grounard move to dismiss Plaintiff's §§ 1981 and 1983 claims against them in their personal and official capacity, because Grounard and the Board members interacted with Plaintiff in their official capacities and claims against state actors acting in their official capacity cannot be sustained under §§ 1981 and 1983. (Defs.' Mem. at 5.) Again, Plaintiff sets forth no argument regarding the Defendant's liability in their personal capacity, but argues that *Ex parte Young*, 209 U.S. at 157, provides that individuals acting in their official capacity are subject to the injunctive powers of the Court pursuant to § 1983. (Pl's Mem. at 1.)

Section 1981 provides that all United States citizens shall have the same right "to make and enforce contracts... as is enjoyed by white citizens." § 1981(a). The action is based upon "purposeful, racially discriminatory actions that affect at least one of the contractual aspects listed in § 1981(b)." *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1017-18 (4th Cir. 1999). This includes discrimination in the making, performance, modification and termination of contracts, as well as the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship. 42 U.S.C. § 1981(b). "When suit is brought against a state actor,

§ 1983 is the exclusive federal remedy for violation of the rights guaranteed in § 1981." *Dennis v. Cnty of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)). A plaintiff claiming a § 1983 violation must show that conduct by a person, acting under color of state law, subjected or caused a person to be subjected to a deprivation of their rights. 42 U.S.C. § 1983.

To act under color of state law, a defendant must exercise power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Adkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). To determine whether a defendant is a state actor, courts look to "whether there is a sufficiently close nexus between the State and the challenged action of the registered entity so that the latter may be fairly treated as that of the State." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974). "[S]tate employment is generally sufficient to render the defendant a state actor." *West*, 487 U.S. at 49 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). Thus, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law. *Id.*

The individual defendants are duly elected members of the Board and the Division Superintendent of Nottoway County Schools, respectively, who performed "under the color of state law" by acting in their official capacities and exercising their power as public employees to terminate Plaintiff's contract. Code of Virginia §§ 22.1-60(A), 71. Thus, the individual defendants are considered state actors for purposes of §§ 1981 and 1983.

### a. Personal Capacity § 1981 Claims

As state actors, the individual Defendants move to dismiss the § 1981 claim alleged against them in their personal capacities on the basis that individual liability does not exist.

(Defs.' Mem. at 5.) Personal-capacity suits seek to establish liability upon government officials for actions that they take "under color of state law" that cause the deprivation of an individual right. *Graham*, 473 U.S. at 165. State officials may be sued in their individual capacities and are not absolutely immune from personal liability by mere virtue of the "official" nature of their acts. *Hafer v. Melo*, 502 U.S. 21, 23-31 (1991). Specifically, individuals may be held liable under § 1981 if they "intentionally cause a corporation to infringe [upon] the rights secured by [the statute]." *Tillman v. Wheaton-Haven Recreation Ass'n*, 517 F.2d 1141, 1146 (4th Cir. 1975). Allegations that the individual defendants were one of the decision-makers or centrally involved in the decision-making is enough to sustain a claim against an individual under § 1981. *Collin v. Rector & Bd. of Visitors of the Univ. of Va.*, 873 F. Supp. 1008, 1015 (W.D. Va. 1995).

Although individuals can be liable under §§ 1981 and 1983, the Complaint fails to set forth any allegations regarding Defendants Simmons, Hurt, Horn, Hawkes and Hinton's personal actions and their personal intentional interference with Plaintiff's rights. Rather, Plaintiff only makes allegations that the Board acted as a whole. As such, Plaintiff fails to adequately set forth § 1981 claims against Defendants Simmons, Hurt, Horn, Hawkes and Hinton individually in their personal capacity; therefore, the Court recommends that Plaintiff's §§ 1981 and 1983 claims against these Defendants be DISMISSED.

Regarding Defendant Grounard, Plaintiff alleges that Defendant Grounard sent Plaintiff several letters and held several meetings with Plaintiff during which he admonished Plaintiff for scheduling issues, failing to perform his job duties and his confrontational demeanor. (Am. Compl. at ¶¶ 43, 50-51, 61-65.) Further, Defendant Grounard sent Plaintiff a letter advising Plaintiff that his contract as a network administrator would not be renewed for the 2011-12 school year and placed Plaintiff on administrative leave. (Am. Compl. at ¶ 72.) Plaintiff alleges

that this behavior — refusing to renew Plaintiff's contract, while white employees continued employment — demonstrates Defendant Grounard's discrimination. (Am. Compl. at ¶ 94.) At this stage, these allegations are sufficient to sustain Defendant Grounard's personal liability for intentionally violating Plaintiff's rights under § 1981. *Collin*, 873 F. Supp. at 1015. Therefore, the Court recommends that the motion to dismiss Plaintiff's claims against Defendant Grounard under §§ 1981 and 1983 be DENIED.

      b. Official Capacity §1981 Claims

Defendants move to dismiss the Plaintiff's §§ 1981 and 1983 claims in their official capacities on the basis that they were state actors. (Defs.' Mem at 5.) Plaintiff argues that *Ex parte Young*, 209 U.S. at 157, creates an exception to sovereign immunity for individuals who violate § 1983 while acting in their official capacities. (Pl.'s Mem. at 1.) However, Defendants accurately respond that the *Ex parte Young* exception for individual liability only applies to cases in which the plaintiff seeks injunctive relief. Because Plaintiff seeks monetary damages here, the individual defendants cannot be liable. (Defs.' Reply to Pl's Opp. to Def. Partial Mot. to Dismiss ("Defs.' Reply") (ECF No. 16) at 3-5.)

While the Eleventh Amendment provides for sovereign immunity, it "permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex parte Young*, 209 U.S. at 157). The Court in *Ex parte Young* held that state law enforcement officers, who threaten or are about to act in violation of the federal constitution, may be enjoined by a federal court from such action. *Ex parte Young*, 209 U.S. at 155-56. However, the exception limits official capacity claims against state officials to only prospective injunctive relief. *Id.* at 169-70. "The exception does not permit federal courts to entertain claims seeking retrospective relief, either compensatory or

other, for completed, not presently ongoing violations of federally-protected rights." *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998) (citing *Edelman v. Jordan*, 415 U.S. 651, 666-67 (1974)). This is so, because when state officials are sued for damages in their official capacity, "a judgment against a public servant 'in his official capacity' levies liability on the government entity the official represents." *Graham*, 473 U.S. at 169 (quoting *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 694 (1978)).

Here, Plaintiff seeks reinstatement of his position and monetary relief in the form of back pay, lost wages and benefits, front pay and punitive damages. (Am. Compl. at 18-19.) "When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Edelman*, 415 U.S. at 663. To the extent that Plaintiff seeks monetary damages from the individual defendants in their official capacities, Plaintiff is essentially seeking the monetary damages from the state for violations of §§ 1981 and 1983. As the Board is a member to the suit — and the real party in interest — the official capacity claims against the individual defendants for violations of § 1981 are duplicative of the suit against the Board. Because sovereign immunity bars an award of monetary damages against the individual Defendants in their official capacities and the claims are duplicative of that claim against the Board, the Court recommends that Plaintiff's §§ 1981 and 1983 claims against the individual defendants in their official capacities be DISMISSED.

B. Due Process Violation

Plaintiff alleges that Defendants failed to afford Plaintiff minimal due process rights when the Board decided not to renew Plaintiff's contract and refused Plaintiff an opportunity to appeal the decision. (Am. Compl. at ¶¶ 97-98.) Defendant argues that the due process claim

13

should be dismissed on the basis that Plaintiff was a non-teacher employee under the law and, therefore, maintained no property interest or constitutional right in continued employment. (Defs.' Mem. at 6-7.) Plaintiff argues that he should be considered a public school teacher based solely on the fact that he obtained a teaching certificate upon the request of the Superintendent and that Defendants should be estopped from arguing otherwise. (Pl.'s Opp. at 2.)

A claim for procedural due process applies only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972); *Wooten v. Clifton Forge Sch. Bd.*, 655 F.2d 552, 554 (4th Cir. 1981). To prevail on a procedural due process claim, Plaintiff must establish "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 314 (4th Cir. 2012) (quoting *Kendall v. Balcerzak*, 650 F.3d 515, 528 (4th Cir. 2011)). To maintain a property interest, a person clearly must retain more than an abstract need, desire or a unilateral expectation of it; instead, he must have a legitimate claim of entitlement. *Id.*

If a plaintiff lacks a continuing-term contract or a clause providing for no discharge without cause, he holds no procedural protections under the Fourteenth Amendment. *Wooten*, 655 F.2d at 554. A property right to continued employment in a school does not arise without a continuing term contract or a no-discharge-without-cause provision in the contract. *Wooten*, 655 F.2d at 554. A public school teacher in Virginia who attains a continuing contract maintains a property interest protected by the due process clause. *Thurston v. Roanoke City Sch. Bd.*, 26 F. Supp. 2d 882, 885 (1998) (emphasis added). The Code of Virginia § 22.1-79(6) provides that school employees be "afford[ed] a timely and fair method of the resolution of disputes between

14

the school board and such employees regarding dismissal" and the resolution "shall be consistent with the provisions of the Board of Education's procedures for adjusting grievances." The final step of the procedure calls for "a final decision . . . by the school board," but requires no hearing. Code of Virginia § 22.1-308(A)(8).

"Schools are required by state law to issue contracts to teachers, principals, assistant principals, and 'supervisors.'" *Sullivan v. Warren Cnty. Sch. Bd.*, 1999 WL 33732554, at *3 (V. Cir. Ct. 1999) (citing Va. Code §§ 22.1-302, 22.1-294). The standard contract provides for a school term of 10 months and shall include 200 days, "including (i) a minimum of 180 teaching days or 990 instructional hours and (ii) up to 20 days for activities such as teaching, participating in professional development, planning, evaluating, completing records and reports, participating on committees or in conferences, or such other activities as may be assigned or approved by the local school board." Code of Virginia § 22.1–302. A different contract, separate and apart from a contract for teaching, is executed for employees receiving a monetary supplement for any athletic coaching or extracurricular activity sponsorship assignment. *Id.*

The Code of Virginia does not define "teacher," so courts defer to statutory interpretation by public officials charged with their enforcement in Virginia. *Thurston*, 26 F. Supp. 2d at 885 (citing *Commonwealth v. Am. Radiator & Standard Sanitary Corp.*, 202 Va. 13, 19, 116 S.E.2d 44, 48 (1960)). The Virginia State Board of Education defines teacher as "a person (i) who is regularly employed full time as a teacher, visiting teacher/school social worker, guidance counselor, or librarian, and (ii) who holds a valid teaching license." *Thurston*, 26 F. Supp. 2d at 885 (citing 8 Va. Admin. Code § 20-440-10 (2013)). This definition includes "librarians, visiting teachers/school social workers, guidance counselors, and teachers. . . [who] primarily interact with and serve students." *Thurston*, 26 F. Supp. 2d at 886 (citing *Turner v.*

15

*Commonwealth*, 226 Va. 456, 309 S.E.2d 337, 339 (1983). The Virginia Board of Education defines "teacher" for purposes of the State Grievance Procedure as "all regularly certified/licensed professional public school personnel employed under a written contract... as a teacher or supervisor of classroom teachers." *Tazewell Cnty. Sch. Bd. v. Brown*, 267 Va. 150, 159, 591 S.E.2d 671, 675 (2004). Finally, Virginia courts also look to the ordinary meaning of the word "teacher." *Burns v. Gagnon*, 283 Va. 657, 676, 727 S.E.2d 634, 645 (2012); *James v. City of Falls Church*, 280 Va. 31, 43, 694 S.E.2d 568, 575 (2010). Examining its plain definition, a teacher is described as "one whose occupation is to instruct." *Burns*, 283 Va. at 645, 676.

Here, Plaintiff describes his positions as a computer technician, network administrator and head basketball coach. (Am. Compl. ¶¶ 12-14.) Plaintiff's Amended Complaint never alleges that his position was considered a "teacher" under Virginia law. Further, Plaintiff fails to plead the existence of a continuing term contract. Additionally, Plaintiff asserts no facts indicating that he met the requirements of a standard teaching contract under Virginia law — that he taught a minimum of 180 days and spent up to 20 days for other activities relating to instruction or professional development.

Plaintiff states that he obtained a teaching certificate for computer technology and a Master's Degree in Education Administration at the bequest of Edwards. (Am. Compl. ¶¶ 31-32.) However, this is merely a component of the requirements for a teacher under Virginia law. No facts indicate that he primarily interacted with or served students in his position or that his position primarily involved instruction. Thus, it cannot be inferred from Plaintiff's Complaint that his position constituted that of a teacher who was entitled to continued employment or a hearing following discharge from his position.

Plaintiff also asserts that estoppel precludes Defendants from arguing that Plaintiff was not a teacher, because Plaintiff was told to earn his teaching certificate. (Pl.'s Opp. at 2.) For equitable estoppel to apply, Plaintiff must show that (1) Defendants made an intentional misrepresentation, (2) Plaintiff reasonably relied upon the misrepresentation, and (3) Plaintiff suffered a detriment. *Lissmann v. Hartford Fire Ins. Co.*, 848 F.2d 50, 53 (4th Cir. 1988). While Plaintiff alleged that the Superintendent required all technology employees to obtain teaching certificates to maintain employment, no one indicated to Plaintiff that he would be considered a teacher or would obtain a teaching contract after becoming certified. (Am. Compl. at ¶¶ 31-32.) Plaintiff also fails to allege any reliance on the statements made by the Superintendent. As such, equitable estoppel does not apply and Defendants are not precluded from arguing that Plaintiff was not a teacher.

Because Plaintiff was not a teacher entitled to continued employment and not entitled to a hearing following his termination, the Court recommends that Plaintiff's due process claim be DISMISSED.

### III. CONCLUSION

For the reasons discussed herein, the Court recommends that Defendants' Partial Motion to Dismiss (ECF No. 11) be GRANTED in part and DENIED in part. The Court recommends that Plaintiff's Title VII claim against Defendants Simmons, Hurt, Horn, Hawkes, Hinton and Grounard be DISMISSED. The Court further recommends that Plaintiff's §§ 1981 and 1983 claim against Defendants Simmons, Hurt, Hawkes, Hinton and Grounard in their official capacities be DISMISSED. Additionally, the Court recommends that Plaintiff's §§ 1981 and 1983 claim against Simmons, Hurt, Horn, Hawkes and Hinton in their individual capacity be DISMISSED; however, the Court recommends that Defendants' Motion to Dismiss Plaintiff's

§§ 1981 and 1983 claim against Defendant Grounard in his personal capacity be DENIED. Finally, the Court recommends that the due process claim as to all Defendants be DISMISSED.

Let the Clerk file this Report and Recommendation electronically and forward a copy to the Honorable Henry E. Hudson with notification to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: May 30, 2013