IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CLIVE C. PETTIS, SR.,                )
                                     )
               Plaintiff,            )
                                     )
v.                                   )        Civil Action No. 3:12CV864–HEH
                                     )
NOTTOWAY COUNTY SCHOOL               )
BOARD, *et al.*,                     )
                                     )
               Defendants.           )

## MEMORANDUM OPINION
### (Cross Motions for Summary Judgment)

Clive C. Pettis, Sr. ("Pettis") initially brought this action against the Nottoway

County School Board (the "Board") and David J. Grounard ("Grounard"), individually

and in his official capacity as Superintendent of Nottoway County Schools.  In the

Amended Complaint (ECF No. 4), Pettis added Board members Helen Simmons, Wallace

Hurt, Robert Horn, Jacqueline Hawkes, and Shelli Hinton individually and in their

official capacities.  Pettis brought this action alleging retaliatory discharge, racial

discrimination in violation of Title VII of the Civil Rights Acts of 1964 and 1991 ("Title

VII") and 42 U.S.C. §§1981 and 1983 (respectively "§ 1981" and  "§ 1983"), and denial

of due process, all stemming from the Board's failure to renew his employment contract.

The Court entered a Final Order adopting the Report and Recommendation of Magistrate

Judge David J. Novak on June 17, 2013 (ECF Nos. 25, 26), wherein it dismissed the

claims against the individual Board members, the individual and official capacity Title

VII claims against Grounard,[1] the § 1981 and § 1983 official capacity claims against Grounard, and the due process claim.  Therefore, the only remaining claims are Pettis' discrimination claim under Title VII, § 1981, and § 1983 against the Board, his § 1981 and §1983 claim against Grounard in his individual capacity, and his retaliation claim under Title VII against the Board.

The Board and Grounard (collectively "Defendants") filed their Motion for Summary Judgment on August 30, 2013. (ECF No. 34.)  Pettis filed his Motion for Summary Judgment on September 3, 2013. (ECF No. 38.)  The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid in the decisional process at this stage.  For the reasons stated herein, and reflected in the Court's Order on October 11, 2013 (ECF No. 64), the Court grants summary judgment in Defendants' favor, and denies summary judgment to Pettis.

## I.  BACKGROUND

The parties have submitted their motions and memoranda, including their respective statements of undisputed material facts. The Court has reviewed the statements, including all referenced supporting documentation filed in support of their positions.  In reviewing cross-motions for summary judgment, the Court will consider each motion separately on its own merits to determine if either party deserves judgment as a matter of law.  *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations

---

[1] Although both parties mention in their memoranda that a Title VII claim still exists against Grounard, any Title VII claim brought by Pettis against Grounard, in an individual or official capacity, was dismissed per Final Order issued on June 17, 2013. (ECF No. 26.)

omitted). In considering each motion, the Court will exercise great care to resolve any factual disputes and "'competing, rational inferences'" in the light most favorable to the opposing party. *Id.* (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

As required by E.D. Va. Loc. R. 56(B),[2] and consistent with Fed. R. Civ. P. 56(c)(1), Defendants have listed the undisputed material facts with citation to particular parts of the record. However, Pettis neglected to follow the same rule in his response, as he failed to cite to the record in disputing the facts set forth by Defendants. The Court, therefore, will deem the facts submitted by the Defendants as admitted for the purposes of considering Defendant's Motion. The relevant facts for the purpose of resolving Defendants' Motion follow.

Further, as to the facts alleged by Pettis, the Court employs the familiar standard of *Anderson v. Liberty Lobby, Inc.*, and resolves all genuine disputes of material fact in favor of the Defendants, while disregarding any factual assertions that are immaterial. 477 U.S. 242, 248 (1986). Following that standard, the relevant facts for the purpose of resolving Pettis' Motion are reflected in the following narrative.

---

[2] Local Rule 56(B) provides:

> A brief in response to [a summary judgment] motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and *citing the parts of the record relied on to support the facts alleged to be in dispute.* In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

E.D. Va. Loc. R. 56(B) (emphasis added).

Beginning in August 1993, Pettis began working for Nottoway County Schools as a Chief Technology Specialist. (Dep. of Clive C. Pettis, Sr. ("Pettis Dep.") at 11:19-21, ECF No. 35-2; Defs.' Mem. Support Mot. Summ. J. Ex. 3 ("Employment Contract") at 1, ECF No. 35-3.) Under the terms of his contract, Pettis received a term contract for one school year that was not automatically renewed. (Employment Contract at 1.) He continued working on 12 month contracts for the remainder of his employment with the school system in various capacities within the computer and technology department. (*See* Defs.' Mem. Support Mot. Summ. J. Ex.4, ECF No. 35-4.) He served in roles including Chief Technology Specialist, Computer Technology Specialist, and Lead Network Administrator. (*Id.*) Over a fourteen year period, Pettis also provided services to the athletic department, coaching football from 1993 to 2003 and basketball from 1993 to 2007. (Defs.' Mem. Support Mot. Summ. J. Ex. 5, ECF No. 35-5.)

Between July 1, 2001 and June 30, 2007, Dr. Gwen Edwards served as the Superintendent of Nottoway County Schools. (Dep. of Gwen E. Edwards ("Edwards Dep.") at 12:14-17, 21-22; ECF No. 35-6.) During her tenure, she continually dealt with performance issues relative to Pettis. (*See* Defs.' Mem. Support Mot. Summ. J. Ex. 7, 8, 16, 19, 20, 21, 23, 24, ECF Nos. 35-7, 8, 16, 19, 20, 21, 23, 24.)[3]

In 2005, Edwards directed that each member of the technology department should obtain a teaching license. (*See* Defs.' Mem. Support Mot. Summ. J. Ex. 11, ECF No. 35-11.) The directive required Pettis and his co-worker, David Johnson ("Johnson"), to

---

[3] For the reasons discussed herein, the specific incidents Edwards handled regarding Pettis' conduct are not directly relevant to this inquiry.

obtain either a three-year provisional license or a five-year professional license. (Edwards Dep. at 25:8-15.) Pettis initially received a provisional license, but took classes (for which the School System reimbursed him) and obtained a professional license. (Defs.' Mem. Support Mot. Summ. J. Ex. 14, 15, ECF Nos. 35-14, 15.) Johnson fulfilled the requirement by obtaining a three-year provisional license. (Defs.' Mem. Support Mot. Summ. J. Ex. 12, ECF No. 35-12.)

Upon Dr. Edwards' retirement, Grounard replaced her as Superintendent beginning in the summer of 2007. (Dep. of Daniel J. Grounard ("Grounard Dep.") at 10:20-11:4, ECF No. 35-25.) With his arrival came new policies among which was the discontinuation of the teaching licensure requirement for technology staff members. (*Id.* at 26:4-19.) Johnson's provisional license expired on July 1, 2008, and he did not renew it once the requirement had been dropped under Grounard's direction. (*See Id.*; Pl.'s Rev. Mem. Support Mot. Summ. J. Ex. 3, ECF No. 41-3.)

In fall of 2007, following Johnson's separation from his wife, he accessed her e-mail account and changed the password. (Dep. of David Johnson ("Johnson Dep.") at 32:14-45:18, ECF No. 41-13.) He was admonished by the administration for violating technology policies and "bringing personal issues to work." (*Id.*) After a meeting with his supervisors, Johnson received a formal reprimand for the inappropriate conduct and warning of further action if he failed to conduct himself appropriately and professionally. (*Id.*; Pl.'s Rev. Mem. Support Mot. Summ. J. Ex. 1, ECF No. 41-1.) Upon contesting his reprimand, Johnson was issued a letter instructing him to follow School Board policies. (Pl.'s Rev. Mem. Support Mot. Summ. J. Ex. 2, ECF No. 41-2.)

Beginning in 2010, Grounard observed poor performance and inappropriate conduct from Pettis.  On October 25, 2010, Grounard met with the technology department to discuss orientation of a new staff member who was assigned to help assist the team. (Grounard Dep. at 34:14-45:19.)  Grounard gave clear instructions to Pettis and his co-worker, Johnson, to show the new employee around and help familiarize him with the system. (*Id.*) While Johnson complied with the directive, Pettis did not. (*Id.*) Grounard met with Pettis regarding his refusal to introduce the new staff member to the operation as instructed. (Defs.' Mem. Support Mot. Summ. J. Ex. 27, ECF No. 35-27.) Following this meeting, Grounard issued a formal reprimand for Pettis' failure to comply with instructions. (*Id.*)  The reprimand also addressed on-going insubordination issues between Pettis and his direct supervisor, Dexter Payne. (*Id.*) Grounard was aware of Pettis' continuing inability to maintain a professional and non-confrontational tone, both in the course of his interactions with supervisors and other staff and faculty members, and included language in the reprimand cautioning Pettis against this conduct. (*Id.*; Grounard Dep. at 50:6-51:24.)

In 2011, Johnson had a heated interaction with Dexter Payne regarding job responsibilities. (Johnson Dep. at 25:3-29:2.)  Following the exchange, Johnson left and did not return to work until the following day. (*Id.*)  Johnson and Dexter Payne were the only individuals involved in this incident and Grounard was not made aware of it. (*Id.*; *see* Grounard Dep. at 166:17-168:7.)

By March 2011, significant technology concerns had been raised to Grounard and he called a meeting to address these issues. (Defs.' Mem. Support Mot. Summ. J.  Ex. 28,

ECF No. 35-28.)  The meeting was announced for 8:00 A.M., and in an e-mail reply,

Pettis stated simply that his work hours began at 8:30 A.M. (*Id.*)  Grounard found this

reply to be inappropriate and immediately issued a letter to Pettis again warning him to

correct his inappropriate tone of communication. (*Id.*)  Following the letter, Grounard

called a meeting with Pettis to address the ongoing issues. (*See* Defs.' Mem. Support

Mot. Summ. J. Ex. 29, ECF No. 35-29.)  Without seeking permission of the attendees,

Pettis brought an audio recorder to the meeting. (*Id.*)  Grounard found this action to be

inappropriate, promptly ended the meeting, and issued Pettis yet another written warning.

(*Id.*; Grounard Dep. 141:9-151:13.)

On April 11, 2011, a meeting was called between Roy Walton, Assistant

Superintendent, Payne, and Anne Stinson, Principal of Nottoway High School, to address

ongoing technology issues as well as Pettis' continued inappropriate behavior. (*See*

Defs.' Mem. Support Mot. Summ. J. Ex. 30, ECF No. 35-30; Dep. of Roy H. Walton, Jr.

at 66:3-68:13, ECF No. 35-26.)  Walton sent a letter to Pettis following the meeting

instructing him to improve his work performance and follow directions from his

supervisors. (Defs.' Mem. Support Mot. Summ. J. Ex. 30.)  Grounard received a copy of

the letter. (*Id.*)

Based upon Pettis' poor performance and inability to get along with his

supervisors and coworkers, Grounard decided not to renew Pettis' contract. (Grounard

Dep. at 159:24-160:5.)  Grounard informed Pettis of his decision on April 18, 2011, and

placed Pettis on administrative leave until his contract expired on June 30, 2011. (Defs.'

Mem. Support Mot. Summ. J. Ex. 32, ECF No. 35-32.)  The Board approved the non-

renewal of Pettis' contract at a meeting held on May 12, 2011. (Pl.'s Rev. Mem. Support Mot. Summ. J. Ex. 11, ECF No. 41-11.)

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue of material fact" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Thus, the court must view the record in the light most favorable to the nonmoving party, and must draw all reasonable inferences in its favor. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). However, "the mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Anderson*, 477 U.S. at 252; *see also Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008). "Thus, if the evidence is 'merely colorable' or 'not significantly probative,' it may not be adequate to oppose entry of summary judgment." *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995) (citations omitted). On cross-motions, the Court will "rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard." *Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).

## III.   ANALYSIS

The record in this case fails to establish a prima facie case of discrimination and retaliation. Accordingly, summary judgment is appropriate on each of these claims.

### a. Discrimination Claims

The Court first turns to the claim of racial discrimination alleged in Count II of the Amended Complaint. Pettis grounds his discrimination claims under three federal statutes: Title VII, § 1981, and § 1983. The elements required to establish a discrimination claim are the same under all three statutes. *See Lightner v. City of Wilmington*, 545 F.3d 260, 263 n.* (4th Cir. 2008); *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n.1 (1993)).

Pettis bears the initial burden of proving a prima facie case of discrimination. A prima facie case can be established by proffering evidence of discriminatory intent. Alternatively, if direct or indirect evidence is not submitted, Pettis may raise the inference of discriminatory intent through the familiar burden-shifting scheme under *McDonnell Douglas*. *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227-28 (4th Cir. 1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Wileman v. Frank*, 979 F.2d 30, 33 (4th Cir. 1992)). Because Pettis offers no direct or indirect evidence of discriminatory purpose,[4] the Court looks to the *McDonnell Douglas* approach. *Belyakov v. Leavitt*, 308 Fed. Appx. 720, 726 (4th Cir. 2009) (citing *McDonnell Douglas Corp*, 411 U.S. at 802).

Under a *McDonnell Douglas* pretext framework, "the employee, after establishing a prima facie case of discrimination, [must demonstrate] that the employer's alleged permissible reason for taking an adverse employment action is actually a pretext for

---

[4] The Fourth Circuit has noted that an employee may offer "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc) (citations omitted). Pettis has not offered any such evidence.

discrimination." *Hill v. Lockeed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (citing *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp.*, 411 U.S. at 807).   Once this inference of unlawful discrimination is triggered, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 607 (4th Cir 1999).   When the employer makes this showing, the presumption of discrimination raised by the prima facie case is dissolved and the employee carries the ultimate burden of proving discrimination by a preponderance of the evidence.  *Id.* (citing *St. Mary's Honor Ctr.*, 509 U.S. at 507; *Burdine*, 450 U.S. at 255 n.10).

As the Fourth Circuit has noted, the Supreme Court has anticipated that facts will vary in discrimination cases, thereby requiring flexibility in the analytical framework applied in evaluating the claims. *Moore v. City of Charlotte*, 754 F.2d 1100, 1105 (4th Cir. 1985) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802 n.13). Because the particularized elements of inquiry were "never intended to be rigid, mechanized, or ritualistic," the Court embraces the leeway granted in *McDonnell Douglas* to suit the circumstances presently at hand.  *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978); *see Burdette v. FMC Corp.*, 566 F. Supp. 808, 814-15 (4th Cir. 1983).

### i. Defendants' Motion

First, in considering the Defendants' Motion, the Court looks to the well-settled four-prong approach requiring the employee to show that (1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) he was performing his job duties

at a level that met his employer's legitimate expectations at the time of the adverse

employment action; and (4) similar employees outside of his class were treated more

favorably under similar circumstances. *Coleman v. Md. Court of Appeals*, 626 F.3d 187,

190 (4th Cir. 2010), *aff'd* 132 S. Ct. 1327 (2012); *Hill*, 354 F.3d at 285 (citation omitted);

*Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995).

The parties do not dispute and it is clear that Pettis has proven the first two

elements. First, Pettis is African-American and therefore a member of a protected class

based upon race. Second, Pettis suffered from an adverse employment action in his

dismissal from the School System. However, with respect to the third prong, Pettis'

proffered proof falls short of the mark.

To meet his burden, Pettis must show that at the time of his dismissal, he was

performing his job in a way that met the legitimate expectations of Defendants.[5]

Specifically, the Court looks to the perception of the decision maker in considering

whether the employee was meeting job expectations at the time of dismissal. *Evans v.*

*Technologies Applications & Serv. Co.*, 80 F. 3d 954, 960-61 (4th Cir. 1996); *Smith v.*

*Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980).

In this case, the record evidence demonstrates that Pettis did not meet Defendants'

legitimate expectations regarding professionalism and work performance over a sustained

---

[5] Self-assessment by Pettis as to his own job performance is irrelevant, and would only be
considered if evidence was offered challenging the legitimacy of Defendants' expectations. *See*
*Johnson v. Mechs. & Farmers Bank*, 309 F. App'x 675, 683 n.8 (4th Cir. 2009). However,
expectations are generally viewed as "legitimate" unless they are proven to have been a mere
"sham designed to hide the employer's discriminatory purpose." *Warch v. Ohio Cas. Ins. Co.*,
435 F.3d 510, 518 (4th Cir. 2006). No evidence has been marshaled to indicate that the
expectations held by Defendants were a scheme to hide their alleged underlying discriminatory
animus.

period of time. Specifically, Grounard had directly expressed concern for Pettis' level of performance in those areas. As the decision maker, only Grounard's perspective is relevant. As Superintendent, it was upon his recommendation that the School Board terminated Pettis by not renewing his annual contract. In supporting their Motion, Defendants highlight a series of incidents resulting in formal admonitions directing Pettis to improve his conduct and job performance. While the evidence encompasses a broad spectrum of time, events which are temporally remote, or occurred outside Grounard's purview, are of marginal relevance. Therefore, the Court will only consider those incidents brought to Grounard's attention and that occurred in reasonable proximity to Pettis' dismissal.

From the time Grounard began his term as Superintendent in 2007 until Pettis' termination, Grounard had several disciplinary run-ins with Pettis. The significant incidents began in the fall of 2010, when Pettis was instructed to conduct the orientation of a new technology team member by familiarizing him with the technology systems. While his co-worker Johnson complied with the order, Pettis refused. Around the same time, Grounard received complaints about Pettis' confrontational tone with co-workers and insubordination within the technology department. Further, Grounard noted that Pettis took no action to fix the technology issues brought to his attention, even though addressing those issues fell squarely within his job responsibilities. A meeting was held to address this collection of concerns and resulted in Grounard issuing Pettis a formal reprimand for his failure to comply with instructions. Grounard's reprimand to Pettis contained the following instructive language: "Your supervisors have given you

12

reasonable directions and feedback. Some of your responses border on insubordination. Please be careful to maintain a professional and non-confrontational tone in communications with supervisors so that this does not become a more serious concern." (Defs.' Mem. Support Mot. Summ. J. Ex. 27.)

By March of 2011, Grounard had been made aware of further technology issues and arranged a team meeting to address those issues. The meeting was announced on March 24, 2011, and was scheduled for March 28, 2011 at 8:00 A.M. Pettis replied via e-mail stating that his work hours are from 8:30-4:30. Grounard found this response to be inappropriate and issued Pettis another formal reprimand.[6] This communication included the following pertinent language: "Please understand your inappropriate response to supervisors can be a course for further discipline actions to include possible suspension or a recommendation for dismissal." (Exhibit Defs.' Mem. Support Mot. Summ. J. Ex. 28, ECF No. 35-28.) A meeting was held on March 28 where Grounard intended to address the previous week's curt e-mail as well as the technology issues. In the course of that meeting, Grounard discovered that, without notification or permission, Pettis was audio recording the meeting. Grounard found the recording to be inappropriate and unprofessional, and Pettis was issued another formal reprimand.[7] (Defs.' Mem. Support Mot. Summ. J. Ex. 29.)

---

[6] Grounard admits that Pettis later stated an acceptable reason for missing the meeting, and further states that had Pettis initially made him aware of the need to take his son to school, they could have rescheduled the meeting or otherwise accommodated his schedule. (Grounard Dep. 102:3-8.)

[7] Grounard stated that his concern was not with the act of recording a meeting, as many others have in the past, but that all participants must be placed on notice before a meeting is recorded.

Within a few weeks, another meeting was necessitated by Pettis' work performance. On April 11, 2011, Roy Walton, Assistant Superintendent, held a meeting with Pettis, as well as Anne Stinson, Principal of Nottoway High School, and Dexter Payne, Director of Technology and Pettis' direct supervisor. In the course of this meeting, the "on-going technology concerns" were addressed, including the lack of internet access and anti-virus protection. Additionally, there was further discussion about Pettis' unprofessional interaction with a member of the Guidance Department regarding additional technology concerns. Pettis deflected blame for the on-going issues and was again cautioned that his performance was not meeting expectations. Pettis received a reprimand letter from Walton, a copy of which was sent to Grounard.

Following this series of events, on April 18, 2011, Grounard informed Pettis that he would recommend to the School Board that his contract not be renewed. He was immediately placed on administrative leave until his contract expired on June 30, 2011.

Pettis, on the other hand, proffers minimal evidence to rebut this evidence or demonstrate a record of satisfactory performance. An employee may establish that he was meeting his employer's expectations by: (1) pointing out concessions by his employer that he was performing satisfactorily at the time of the dismissal; (2) offering evidence of his prior satisfactory performance reviews; or (3) providing expert testimony as to the employer's performance expectations and an analysis of his performance in light of those expectations. *See King v. Rumsfeld*, 328 F.3d 145, 149-50 (4th Cir. 2003);

---

(*See* Grounard Dep. 141:21-151:13; Defs.' Mem. Support Mot. Summ. J. Ex. 29, ECF No. 35-29.)

*Conyers v. Va. Hous. Dev. Auth.*, 927 F. Supp. 2d 285, 292 (E.D. Va. 2013), *aff'd*, 2013 U.S. App. LEXIS 14811, *1 (4th Cir. July 22, 2013). Pettis offered no evidence of concessions by his employer that he was performing satisfactorily, nor did he offer any type of expert opinion on the merits of his performance. Pettis has only tendered one single-page evaluation performed by Payne in the summer of 2010. Even this evaluation supports a need for improvement, as Payne stated, "You do need to be more positive with staff and their issues," and noted his need for improvement in two evaluative metrics: "Maintains positive rapport with administrators/staff," and "Listens to and communicates regularly with others." (Pl.'s Rev. Mem. Support Mot. Summ. J. Ex. 4, ECF No. 41-4.)

The evidence submitted by Defendants points conclusively to Pettis' continued history of poor performance and highlights his inability to meet Grounard's expectations, even when cautioned to take corrective action. At the time of his termination, Pettis was not meeting the expectations repeatedly laid out before him. Based on this record, no reasonable jury could find that Grounard's expectations for Pettis to improve his performance were anything but genuine, and Pettis clearly failed to comply.

The Court need not address the fourth prong or the remaining elements of the burden shifting framework because, even when the evidence is viewed most favorably to Pettis, he cannot satisfy the critical third element. To entitle Pettis to the benefit of the *McDonnell Douglas* presumption, he must satisfy all four elements—proof of each simply sets the stage for the next prong. *See Holmes v. Bevilacqua*, 794 F.2d 142, 147

15

(4th Cir. 1986) (en banc). Thus, Pettis fails to allege a prima facie case of discrimination under the four-prong *McDonnell Douglas* framework.[8]

### ii. Pettis' Motion[9]

Alternatively, the Court looks to a modified framework in reviewing Pettis' Motion for Summary Judgment.[10] The prima facie requirement can be met, and associated presumption of discrimination raised, upon the employee's showing that (1) he is a member of a protected class, (2) that he engaged in conduct similar to that of a person of another race, and (3) that disciplinary measures enforced against the employee were more severe than those enforced against his co-worker. *Moore*, 754 F.2d at 1105-06; *Burdette*, 566 F. Supp. at 815. When comparing disciplinary actions between employees, "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner*, 545 F.3d at 265. Therefore, Pettis must demonstrate that he is "similar in all relevant respects to [his] comparator." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (citation omitted). To be sufficiently similar, Pettis must show that he and his comparator were subject to the same standards and "'engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992)).

---

[8] The discussion surrounding Pettis' co-worker, Johnson, *infra*, applies to the fourth prong of this framework. Pettis' arguments and evidence fail to reach that stage.

[9] While Defendants' Motion is dispositive of Pettis' claims, the Court will also analyze Pettis' Motion, in line with *Rossignol*, discussed *supra*. 316 F.3d at 523.

[10] The Court notes an absence of legal citations offered in Pettis' Motion thereby offering little support or authority to his claims.

Pettis attempts to draw a direct comparison with David Johnson. That comparison, however, is not sufficient to satisfy the prima facie requirement in this case. Although Pettis and Johnson are both employed in the technology department and have similar job descriptions, on close examination, their respective conduct differs in a number of significant respects.

Pettis relies on Johnson's conduct from 2007 when Johnson was issued a formal reprimand. Specifically, Johnson's misconduct occurred when he accessed his ex-wife's e-mail account without her permission and changed the password. This resulted in two written reprimands concerning this specific incident, cautioning that conduct of this type, and failure to follow Board polices, could lead to Johnson's termination. Pettis offers no evidence that Johnson ever repeated this type of conduct or received any other disciplinary action. In contrast, however, Pettis was reprimanded for a continuing course of similar conduct.

Further, Pettis points to the teaching license requirement instituted by Edwards in 2005, again claiming disparate treatment between himself and Johnson. At Edwards' direction, both Pettis and Johnson were instructed to acquire teaching licenses. This requirement could be met by obtaining either a provisional or full license. While Pettis complied by acquiring a full license, Johnson opted to obtain a provisional license. Pettis points to Johnson's provisional, three-year license as another situation where he was treated differently. Pettis contends that Johnson allowed his license to expire without any attempt to renew. Because Pettis' full license remained in effect, he argues that Johnson

was treated unfairly in allowing his employment to continue after this license expired. Again this comparison founders.

Subsequent to the original license directive given by Edwards, and the expiration of Johnson's provisional license, Grounard took over as Superintendent. Grounard dropped the requirement of technology personnel having teaching licenses. Therefore, Johnson met Edwards' requirement with his provisional license and was at all times in compliance.

Lastly, Pettis points to a 2011 interaction between Payne and Johnson. A heated exchange took place between Johnson and his supervisor, Payne. However, significantly, this event was never relayed to Grounard nor did any administrator, including Grounard, ever issue a formal reprimand. As has been established, Grounard is the decision maker on personnel matters and had no knowledge of this incident. Therefore, no comparison can be drawn in the way Pettis and Johnson were treated. Grounard was unaware of the argument between Payne and Johnson and the respective actions of misconduct of Johnson and Pettis were dissimilar.

"An employer is entitled to summary judgment if the plaintiff fails to establish a prima facie case of discrimination or fails to raise a factual dispute regarding the employer's proffered reasons for the alleged discriminatory act." *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir. 1995) (citations omitted). Under both *McDonnell Douglas* analyses employed by the Court, Pettis fails to establish a prima facie case of discrimination, thereby making summary judgment appropriate for Defendants.

### b. Retaliation Claim

Summary judgment is similarly appropriate on Pettis' claim that he was

terminated in retaliation for his EEOC claim.  Title VII prohibits employers from

"discriminat[ing] against any of [its] employees . . . because [the employee] has made a

charge, testified, assisted, or participated in any manner in an investigation, proceeding,

or hearing under this title."  42 U.S.C. § 2000e-3(a).  The elements of a prima facie

retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse

employment action; and (3) a causal link between the protected activity and the

employment action.  *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir.

2010).

Pettis cannot draw a causal connection between the alleged protected activity and

his termination because the EEOC claim is too far removed from his termination,

separated by a gap of over four years.  "A lengthy time lapse between the employer

becoming aware of the protected activity and the alleged adverse employment action, as

was the case here, negates any inference that a causal connection exists between the two."

*Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir.

1998).  The longer the time period between the protective activity and the alleged

retaliation, the less a court presumes a causal connection.  *See Hooven-Lewis v. Caldera*,

249 F.3d 259, 278 (4th Cir. 2001) ("A six month lag is sufficient to negate any inference

of causation.") (citation omitted).  This passage of time between the filing of Pettis' 2006

EEOC claim and his 2011 termination eliminates any inference of a causal connection

between the two.  *Dowe*, 145 F.3d at 657.  Thus, his retaliation claim fails.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 34) is granted, Pettis' Motion for Summary Judgment (ECF No. 38) is denied, and the case will be dismissed with prejudice.

/s/

Henry E. Hudson
United States District Judge

Date: *Nov. 1, 2013*
Richmond, Virginia